UNITED STATES of America

v.

**Rodney NEDD**

**No. CR–05–92–B–W–02.**

United States District Court,
D. Maine.

Jan. 30, 2006.

Joel B. Casey, Office of the U.S. Attorney, District of Maine, Bangor, ME, for Plaintiff.

David W. Bate, Law Office of David W. Bate, Bangor, ME, for Defendant.

## ORDER OF DETENTION PENDING SENTENCING

WOODCOCK, District Judge.

After pleading guilty to two federal firearms charges, Rodney Nedd sought presentence release under 18 U.S.C. § 3143. Although this Court concludes that he established by clear and convincing evidence that he is not a risk of flight, it also concludes he has not similarly established that he does not pose a danger to the community. This Court orders his detention pending sentence.

## I. Background

Mr. Nedd, a Massachusetts resident, was charged on November 9, 2005 in a two-count indictment of conspiring in violation of 18 U.S.C. § 371 to provide false information to a federal firearms licensee to purchase two firearms in violation of 18 U.S.C. § 922(a)(6) and aiding and abetting a violation of 18 U.S.C. § 922(a)(6) in acquiring the same two firearms. (Docket # 1). Mr. Nedd was arraigned before Magistrate Judge Kravchuk on December 8, 2005 and entered a plea of not guilty to both counts. (Docket # 21). The same day, Mr. Nedd was released subject to certain conditions. (Docket # 24, 25).

Mr. Nedd was allowed to return to Massachusetts, but was required to remain under pretrial supervision. Ms. Gina P. Affsa, a Pretrial Services Officer for the District of Massachusetts, was his supervising officer. This Court's December 8, 2005 Order included the following conditions of release: (1) the defendant shall immediately advise the court, defense counsel and the U.S. Attorney in writing before any change in address and telephone number; (2) the defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed; and, (3) the defendant shall submit to any method of testing

required by the pretrial services office for determining whether the defendant is using a prohibited substance. (Docket # 25).

On January 24, 2006, the Government moved for revocation of the order setting conditions of release, for the issuance of an arrest warrant, and for an order directing the defendant's pretrial detention. (Docket # 42). On January 26, 2005, Mr. Nedd appeared before this Court and entered guilty pleas to Counts I and II. (Docket # 45). At the conclusion of the Rule 11 hearing, this Court addressed the question of detention pending sentence under 18 U.S.C. § 3143(a)(1).[1] Mr. Nedd requested presentence release, based on the earlier conditions; the Government, however, objected and continued to press for detention, based on asserted violations of the conditions of Mr. Nedd's pretrial release.

## II. The Detention Hearing

This Court held a detention hearing at the close of the Rule 11 hearing. The Government introduced the testimony of Wade Maddox, Senior United States Probation Officer, and certain exhibits. The evidence revealed: (1) on December 8, 2005, after being released with pretrial conditions, Mr. Nedd met with Senior United States Probation Officer Wade Maddox, who advised him of the terms and conditions of pretrial release; (2) his pretrial supervision was transferred to Boston near his residence; (3) on December 27, 2005, Mr. Nedd failed to appear for a

mandatory urinalysis; (4) on December 30, 2005, Mr. Nedd failed to report to pretrial services for an appointment with Officer Affsa; (5) following the missed appointment, Officer Affsa was unable to make contact with Mr. Nedd for a period of time; (6) on January 6, 2006, Mr. Nedd reported to Ms. Affsa that he had moved from his mother's residence to his girlfriend's residence in Dorchester, Massachusetts, without notifying pretrial services of the change of address prior to the move; (7) on January 6, 2006, when instructed to submit to a urinalysis, Mr. Nedd became belligerent with Pretrial Services Officer O'Brien and, to avoid escalating the encounter, Officer O'Brien aborted the test; (8) on January 20, 2006, Mr. Nedd failed to appear for urinalysis as required; and, (9) also on January 20, 2006, Mr. Nedd failed to make the mandated weekly telephone call to Officer Affsa.

Mr. Nedd took the stand and denied he had been belligerent with Officer O'Brien. Instead, it was Officer O'Brien, who became aggressive with him. After Officer O'Brien asked him to prepare for the urinalysis, Mr. Nedd said that he asked Officer O'Brien how long he had been doing urine tests and Officer O'Brien overreacted. After telling Mr. Nedd that he had been doing these tests since Mr. Nedd was nine years old, he told Mr. Nedd that "This ain't Roxbury." Mr. Nedd, who is African–American, took this remark as a

---

[1]. Mr. Nedd's Rule 11 hearing was originally scheduled for January 18, 2006, but Mr. Nedd moved to continue that hearing on January 17, 2006, based on his inability to pay for a bus ticket from Boston to Bangor. (Docket # 36, 37). This Court granted Defendant's motions on January 18, 2006. (Docket # 38, 39). On January 18, 2006, the matter was reset for a Rule 11 hearing for January 25, 2006. (Docket # 40). On January 24, 2006, the Government moved to revoke Mr. Nedd's pretrial release, for the issuance of an arrest warrant, and for an Order directing his pretrial detention, alleging certain violations of the conditions of his pretrial release. (Docket # 42). Mr. Nedd failed to appear as scheduled on January 25, 2006 and this Court granted the Government's motion for an arrest warrant, but held it in abeyance to give the Defendant an opportunity to appear the next day at a rescheduled Rule 11 hearing. (Docket # 43). Mr. Nedd appeared as scheduled on January 26, 2006. (Docket # 45).

racial slur, because Roxbury is a predominantly black area of Boston. After further discussion, Officer O'Brien told Mr. Nedd that if he wanted to have another officer perform the test, he could wait until after 5:00 p.m., when the next officer came on shift. Mr. Nedd agreed and when United States Pretrial Services Office Chief John Riley came at 5:00 p.m., Mr. Nedd submitted to the test and it was negative.

Mr. Nedd explained his other failures to appear and report as misunderstandings. According to Mr. Nedd, he obtained employment with International Enterprises, Inc. in Salem, Massachusetts, approximately one hour of travel time from Dorchester. After he told Officer Affsa about his new employment, he understood he was no longer required to submit to the random urinalyses or report in person. Instead, Mr. Nedd claimed he believed all of his obligations to pretrial services were to be taken care of over the telephone.

### III. Discussion

Section 3143(a)(1) of title 18 sets forth the standards to evaluate whether to release a defendant once a guilty plea has been entered, but before sentencing.[2]

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) and (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. 3143(a)(1).

 Mr. Nedd argued that the burden for establishing that he is likely to flee or that he poses a danger rests with the Government. This is simply incorrect. The statutory language plainly states that once a defendant has pleaded guilty and is awaiting sentencing, the judicial officer "shall" order detention unless he finds by "clear and convincing evidence" that he is unlikely to flee or pose a danger. This language creates a presumption in favor of detention, a presumption overcome only when the defendant presents clear and convincing evidence that he has met the statutory criteria. *See United States v. Miller,* 753 F.2d 19, 22 (3d Cir.1985) ("The [1984] Act ... was enacted because Congress wished to reverse the presumption in favor of bail that had been established under the prior statute, the Bail Reform Act of 1966."); *United States v. Marks,* 947 F.Supp. 858, 863 (E.D.Pa.1996) ("[Section] 3143(a) creates a presumption in favor of detention pending sentencing."); Fed.R.Crim.P. 46(c) ("The provisions of 18 U.S.C. § 3143 govern release pending sentencing .... The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.").

 This Court concludes that Mr. Nedd met his burden on the question of whether he is a risk of flight. Although he did not appear as required at all times while on pretrial supervision, he voluntarily came from Boston to Maine to enter a plea of guilty, knowing the Government had filed a motion for his detention. Without evidence of prior flight, this Court concludes in these circumstances his very

---

**2.** Neither crime triggers the mandatory detention provisions of 18 U.S.C. § 3143(2). *See*

*United States v. Bishop,* 350 F.Supp.2d 127 (D.Me.2004).

presence is clear and convincing evidence that he would not flee if released pending sentence.

This Court cannot, however, conclude by clear and convincing evidence that Mr. Nedd does not present a danger to the community. *See* 18 U.S.C. § 3142(g). First, his crimes are serious.[3] The Government's Version of the Offense to which Mr. Nedd admitted establishes that on February 24, 2005, he asked Megan Wilson, now a co-defendant, to purchase handguns for him at a local pawnbroker.[4] (Docket # 34). Ms. Wilson misrepresented the actual purchaser on ATF Form 4473 and purchased two handguns: (1) a Jimenez JA Nine 9 millimeter pistol; and, (2) a Keltec P40 .40 caliber pistol. *Id.* She immediately gave the weapons to Mr. Nedd, who gave them to a friend, Billy Diaz. *Id.* The Government introduced evidence that one of these firearms was recovered in Dorchester in the possession of a known gang member and had been used in a drive-by shooting. In any event, these are serious handguns, not generally associated with hunting, and Mr. Nedd, for unclear reasons, was willing to violate federal firearms law to give them to a friend.

Second, although Mr. Nedd recently obtained employment, he completed a financial declaration on December 8, 2005 that he has no financial resources whatsoever, no cash, no accounts, no property at all, and no debt. 18 U.S.C. § 3142(g)(2). He has no stable residence. *See* 18 U.S.C. § 3142(g)(2). He lived for a time with his mother, but otherwise has moved periodically from apartments owned by a series of girlfriends. He is currently living in a girlfriend's apartment in the Boston area. He has a criminal record, but this Court will reserve determining its significance pending clarification.

Third, Mr. Nedd has not convinced this Court that he complied with the terms of his pretrial release. The Government submitted evidence of multiple violations, failures to appear as required in the brief period he has been on release, including failures to appear for random urinalyses. Mr. Nedd's explanations are contradicted by what appears elsewhere in the record.[5]

Also disturbing is the contradiction between Mr. Nedd and Pretrial Services Of-

---

3. Although the Sentencing Guidelines will no doubt advise a lower sentence, a violation of 18 U.S.C. § 922(a)(6) is a Class C felony, see 18 U.S.C. §§ 924(a)(2), 3559(a)(3), and subjects Mr. Nedd among other things to imprisonment not to exceed ten years. 18 U.S.C. § 924(a)(2). If Mr. Nedd has a criminal history category I (and there are indications he may not), he would be subject to an advisory guideline range of 10 to 16 months, the lower end of which is well within the time he would be expected to be sentenced. Mr. Nedd does not fit within § 3143(a)(1)'s escape hatch, which provides that a person for whom the United States Sentencing Guidelines would not recommend incarceration is not subject to its detention provisions. 18 U.S.C. § 3143(a)(1). The Government refers to a Pretrial Services Report, which attached a copy of Mr. Nedd's criminal record in Massachusetts. Other than establishing that Mr. Nedd is not a stranger to the criminal justice system, it is difficult to draw any definitive conclusions about the significance of his criminal record from this evidence, due to different use of nomenclature in the Massachusetts criminal justice system. This Court will await clarification in the Presentence Investigation Report.

4. Megan Wilson was indicted as a co-defendant for the same crimes and pleaded guilty to both counts on January 20, 2006.

5. For example, Mr. Nedd testified that Officer Affsa allowed him to make telephone, rather than in-person contact to comply with his reporting obligations and did away with the drug testing requirement. Officer Affsa denied these assertions and, therefore, there is another series of inconsistencies between another United States Pretrial Services Officer and Mr. Nedd.

ficer O'Brien. Mr. Nedd describes the encounter essentially as an overreaction by Officer O'Brien to his innocent inquiry, continuing with a racial remark, and ending with his vindication. Officer O'Brien describes Mr. Nedd as becoming belligerent, making smart remarks, staring down the officer, and assuming an aggressive physical posture, resulting in his decision to abort the test. Rather than telling Mr. Nedd that "This ain't Roxbury," Officer O'Brien reported that he informed Mr. Nedd: "This isn't Roxbury District Court; you are in federal court," which the Government argued referred to perceived differences between the state and federal systems. This Court need not resolve this contradiction, but having had the opportunity to assess Mr. Nedd, this Court cannot conclude that his version of the encounter on January 6, 2006 with Officer O'Brien is sufficiently convincing to sustain his significant burden of proof.

Mr. Nedd is guilty of serious federal firearms charges, his history and characteristics do not otherwise indicate stability, he failed to comply with all the terms and conditions of his pretrial release, and he may have acted belligerently and aggressively against a United States Pretrial Services Officer while the officer was attempting to carry out court-ordered testing. Based on this evidence, this Court cannot conclude that he has sustained his burden of proof for presentence release by clear and convincing evidence.

## IV. Conclusion

This Court concludes that Mr. Nedd failed to sustain his burden to prove by clear and convincing evidence that he will not pose a danger to the safety of other persons or the community under § 3143(a)(1) and therefore ORDERS the Defendant detained pending imposition of sentence.[6]

The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility. The Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

SO ORDERED.

---

6. This leaves the Government's motions for revocation, for arrest, and for an order directing the defendant's pretrial detention. (Docket # 42). This Court concludes those motions must be dismissed as moot. The bases for the motions included violations of conditions of pretrial release and invoked the penalty provisions of 18 U.S.C. § 3148. Although some of the evidence for the alleged violations of conditions under § 3148 would have been the same as evidence for post-plea detention under § 3143, the standards and burdens are different. To grant the Government's pending motions would unnecessarily confuse matters. This Court is ordering post-plea and pre-sentence detention under § 3143(a)(1), the Defendant having failed to demonstrate by clear and convincing evidence that he does not pose a danger to the safety of any other person or the community. The Government's motions for revocation of the order setting conditions of release, for the issuance of an arrest warrant, and for an order directing the defendant's pretrial detention are dismissed without prejudice as moot.